**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION**

| | |
|---|---|
| DIANE HOPKINS and GARY LAWTON, on behalf of themselves and all others similarly situated, | CIVIL ACTION No. 10- |
| Plaintiffs, | |
| v. | **CLASS ACTION COMPLAINT** |
| BASIC RESEARCH, L.L.C.,  CARTER-REED COMPANY, L.L.C., DENNIS GAY, DANIEL B. MOWREY, MITCHELL K. FRIEDLANDER, AND DOES 1 through 10, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

Plaintiffs Diana Garcia Hopkins and Gary Lawton (collectively, "Plaintiffs") bring this action on behalf of themselves and the Class described below against Defendants Basic Research, L.L.C. ("Basic Research"), Carter-Reed Company ("Carter-Reed"), Dennis Gay, Daniel B. Mowrey, Mitchell K. Friedlander, and Does 1-10 (collectively, "Defendants") for damages and injunctive relief, and allege as follows:

## I.
## NATURE OF THE ACTION

1.      Plaintiffs bring this lawsuit to halt Defendants' false, deceptive, and unfair labeling and advertising of Relacore and Relacore Extra as dietary supplements that help prevent and reduce stress-related abdominal fat and have the additional benefits of reducing stress and anxiety and elevating mood and energy.  Defendants have sold more than 12.7 million bottles of Relacore and Relacore Extra as a result of that advertising message, which is false, deceptive,

and unfair because Relacore and Relacore Extra are ineffective and do not help prevent or reduce stress-related abdominal fat or provide any of their other proclaimed benefits.

2.     Plaintiffs and the Class are entitled to recover damages arising from Defendants' false, deceptive, and unfair trade act and practices and their unjust enrichment, and from the violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*, carried out by Defendants Gay, Mowrey, and Friedlander.

## II.
## PARTIES

3.     Plaintiff Diana Hopkins is a citizen of Florida who resides in Brevard County, Florida.

4.     Plaintiff Gary Lawton is a citizen of New Jersey who resides in Atlantic County, New Jersey.

5.     Defendant Basic Research, L.L.C. is a Utah limited liability company with its principal place of business located at 5742 West Harold Gatty Drive, Salt Lake City, Utah 84116.  Basic Research markets, advertises, distributes, and sells Relacore and Relacore Extra throughout the United States, including to thousands of consumers in Florida.

6.     Defendant Carter-Reed Company L.L.C. is a Utah limited liability company with its principal place of business located at 5742 West Harold Gatty Drive, Salt Lake City, Utah 84116.  Carter-Reed manufactures, promotes, markets, distributes, and sells Relacore and Relacore Extra throughout the United States, including to thousands of consumers in Florida.

7.     Defendant Dennis Gay is a citizen of the State of Utah who has a place of business located at 5742 West Harold Gatty Drive, Salt Lake City, Utah 84116.

8.     Defendant Daniel B. Mowrey is a citizen of the State of Utah who has a place of business located at 5742 West Harold Gatty Drive, Salt Lake City, Utah 84116.

9.      Defendant Mitchell K. Friedlander is a citizen of the State of Utah who has a place of business located at 5742 West Harold Gatty Drive, Salt Lake City, Utah 84116.

10.     Plaintiffs do not know the true names or capacities of the persons or entities sued herein as Does 1 through 10, and therefore sue such defendants by such fictitious names. Plaintiffs are informed and believe and thereon allege that each of the Does defendants is in some manner legally responsible for the damages suffered by Plaintiffs and the members of the Class as alleged herein.  Plaintiffs will amend this Complaint to set forth the true names and capacities of these defendants when they have been ascertained, along with appropriate allegations.

### III.
### JURISDICTION & VENUE

11.     This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States, including 28 U.S.C. § 1964(c).

12.     This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a).

13.     This Court also has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) because the matter in controversy in this civil action exceeds the sum or value of $5,000,000, exclusive of interest and costs, and this is a class action in which members of the Class are citizens of states other than Utah, where Defendants are incorporated, have their principal place of business, and/or reside, and the Class consists of more than one hundred members.

14.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because Defendants reside in this District and a substantial part of the events or omissions giving rise to the claims herein occurred within this District, including Plaintiff Garcia Hopkins' purchase of Relacore as a result of Defendants false, deceptive, and unfair labeling and advertising of the

product.

15.     Defendants reside in this District for purposes of 28 U.S.C. § 1391 because they are subject to general personal jurisdiction in this District.  Defendants have continuous and systematic contacts with Florida, including this District, through selling their products in Florida to Florida residents, including Plaintiff Garcia Hopkins and other residents of this District. Defendants are also subject to specific personal jurisdiction in this District because their contacts with this District gave rise to the instant action.

## IV.
## FACTUAL ALLEGATIONS

16.     Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs as if set forth at length herein.

17.     Plaintiff Garcia Hopkins learned about Relacore through a television commercial she saw many times on several different national television stations throughout 2009.  The commercial showed a picture of an overweight abdomen as the narrator asked, "Does this look like you?"  The narrator then said, "It's not your fault – it's the stress hormone that's making you store weight in your belly."  The narrator claimed that Relacore was the answer because it stops the body from producing the stress hormone by reducing stress, causing users of the product to lose stress-related abdominal fat.

18.     In December 2009, Plaintiff Garcia Hopkins saw Relacore displayed for sale at a Wal-Mart store in Brevard County, Florida.  Plaintiff Garcia Hopkins read the efficacy claims on Relacore's product box.  The product box for Relacore claims that the product "Helps Prevent Stress-Related Abdominal Fat" and is a "Stress Reducer/Mood Elevator," which is "Formulated to help:" "Reduce Stress," "Reduce Mild Anxiety," "Improve Mood," "Fight Mid-Day Fatigue," and "Increase Energy."  The product box for Relacore appears below:



19.     Relying upon Defendants' claim that Relacore helps prevent and reduce stress-related abdominal fat, Plaintiff Garcia Hopkins purchased a bottle of Relacore from Wal-Mart in December 2009.  Over the following three months, she purchased three more times bottles of Relacore at Wal-Mart based on that claim.

20.     Plaintiff Garcia Hopkins took the Relacore tablets she purchased as directed, and they were ineffective.  She stopped purchasing Relacore in April 2010 because the product did not work as labeled and advertised.

21.     Plaintiff Lawton learned about Relacore through a television commercial he saw on a national television station in January 2009 that claimed that Relacore helps reduce stress-related abdominal fat and weight.  The front of the Relacore bottle's label, which claims that Relacore helps prevent stress-related abdominal fat, reduce stress and anxiety, and elevate mood and energy, was featured prominently in the commercial.

22.     In February 2009, Plaintiff Lawton saw Relacore displayed for sale at a Rite Aid store in Atlantic County, New Jersey.  Plaintiff Lawton read the efficacy claims on Relacore's product box, including the claim that the product "[H]elps Prevent Stress-Related Abdominal Fat."

23.     Relying upon Defendant's claim that Relacore helps prevent and reduce stress-related abdominal fat as well as reduce stress and anxiety and elevate mood and energy, Plaintiff Lawton purchased one bottle of Relacore from Rite Aid in February 2009.  Over the next eleventh months, he purchased eleven more bottles of Relacore at Rite Aid based on that representation.

24.     Plaintiff Lawton took the Relacore tablets he purchased as directed, and they were ineffective.  He stopped purchasing Relacore in January 2010 because the product did not work as labeled and advertised.

25.     In February 2010, Plaintiff Lawton saw Relacore Extra displayed for sale at a Rite Aid store in Atlantic County, New Jersey.  Plaintiff Lawton read the efficacy claims on Relacore Extra's product box, including the claim that the product "[H]elps Prevent Stress-Related Abdominal Fat."  The product box for Relacore claims that the product "Helps Prevent Stress-Related Abdominal Fat" and is a "Stress Reducer/Mood Elevator," which is "Formulated to

help:" "Reduce Stress," "Reduce Mild Anxiety," "Improve Mood," "Fight Mid-Day Fatigue,"

and "Increase Energy."  The product box for Relacore Extra appears below:



26.     Relying upon Defendant's claims that Relacore Extra helps prevent and reduce

stress-related abdominal fat as well as reduce stress and anxiety and elevate mood and energy,

Plaintiff Lawton purchased two bottles of Relacore Extra at Rite Aid in February 2009.  Plaintiff

believed that Relacore Extra might be more potent and work better than Relacore because of the

claim "Maximum Strength" on the product's labeling and the inclusion of "Extra" in the product's name.  He took the Relacore Extra tablets in one of the bottles he purchased as directed, and they were ineffective.  He did not take the Relacore Extra tablets in the other bottle he purchased, nor did he purchase Relacore Extra again, because the product did not work as labeled and advertised.

27.     Defendants also carried out their false and deceptive advertising scheme through www.relacore.com, their website that promotes Relacore and Relacore Extra.   Until very recently, that website stated that "Relacore's proprietary compounds help reduce the stress that causes cortisol production, thereby helping to reduce stress-related belly fat."  The website claimed that "[t]hese functional compounds have enjoyed a long history of use and have been proven effective in clinical trials."  Defendants have offered no justification for the claim that proprietary compounds of Relacore and Relacore Extra have been proven effective in clinical studies.  The website also falsely, deceptively, and unfairly stated that "Relacore's proprietary compounds help reduce the stress that causes cortisol production, thereby helping to reduce stress related belly fat."  There has been no scientific validation of a causal relationship between cortisol production and weight or fat gain or between cortisol reduction and weight or fat loss.

28.     The website went on to state that "Relacore Extra contains Relacortin Plus, a more potent form of the proprietary Relacortin blend – present in the original Relacore. Relacortin Plus is a more intense concentration, designed to help minimize stress and reduce hormone levels that are associated with the accumulation and retention of stress-related belly fat."

29.     Defendants' advertising message for Relacore and Relacore Extra is, false, deceptive, misleading, and unfair because Relacore and Relacore Extra are ineffective and do not

help prevent or reduce stress-related abdominal fat, do not reduce stress and anxiety, and do not elevate mood and energy.

30.     There is no reasonable scientific basis for Defendants' efficacy claims about Relacore and Relacore Extra and prevention and reduction of abdominal fat, stress and anxiety relief, mood elevating and energizing qualities, or reduction of cortisol levels.

31.     There is no reasonable scientific evidence supporting the claims that Relacore and Relacore Extra help prevent and reduce stress-related abdominal fat and are formulated to help reduce stress and anxiety and improve mood and energy.  Defendants' entire marketing scheme for Relacore and Relacore Extra consists of lies and deception.

32.     Plaintiffs and the Class have been injured because they purchased products that were ineffective and did not provide the benefits promised by Defendants.

33.     Defendants knew or should have known that Relacore and Relacore Extra do not prevent or reduce stress-related abdominal fat, do not reduce stress and anxiety, and do not elevate mood and energy.  Defendants' conduct was fraudulent, malicious, deliberately oppressive, and/or constituted such gross negligence as to indicate a wanton disregard for the rights and safety of others.

34.     Defendants Basic Research, Gay, Mowrey, and Friedlander have a long history of manufacturing, labeling, and marketing "pseudo-pharmaceutical" products with names similar to actual pharmaceutical products, including Relacore and Relacore Extra.  Defendants Basic Research, Gay, Mowrey, and Friedlander have a practice of creating a new limited liability company for each such product they manufacture, label, advertise, and sell to consumers. Defendants Basic Research, Gay, Mowrey, and Friedlander have made false and misleading claims about the miraculous effects of those products.

9

35.     Carter Reed is a Basic Research affiliate that was created by Defendants Basic Research, Gay, Mowrey, and Friedlander to market Relacore and Relacore Extra to the public. Although Carter-Reed's name appears on the Relacore and Relacore Extra product boxes and labels, as well as the website for the products, Basic Research manufactures and controls the marketing of the products.  Both companies share the same principal place of business, and Basic Research has previously marketed purported weight-loss and fat reducing products through different trade names.  For example, Basic Research manufactured products identified in Exhibit 1 and marketed them through limited liability companies called A.G. Waterhouse, L.L.C. and Klein-Becker, L.L.C.  Those companies also shared the same principal place of business as Basic Research.

36.     Defendant Dennis Gay is an officer and principle shareholder of Basic Research and Carter Reed.  Defendant Gay exercises control over Basic Research and Carter Reed. Defendant Gay has final decision-making authority over Basic Research's marketing department, which is responsible for the labeling, advertising, and media placement of dietary supplements sold by Basic Research and Carter Reed.  Specifically, Defendant Gay is responsible for the design, content, approval, distribution, and publication of all Relacore and Relacore Extra advertisements, including the specific advertisements viewed and relied upon by Plaintiffs and Class members.  Within the Defendants' business enterprise, Defendant Gay is the person ultimately responsible for placing the advertisements for products, including Relacore, into the stream of commerce and for selling the products in interstate commerce.  Defendant Gay makes the final decision on both the content of advertising and the product pricing.  Furthermore, Defendant Gay uses various companies and registers various trademarks to conceal from the

public the fact that he and Basic Research are the source of Relacore, Relacore Extra, and other products.

37.     Defendant Gay's intentional tortious acts and personal participation in the wrongful conduct underlying this class action subject him to liability and deprive him of any protection he might otherwise have for his personal liability under the corporate shield doctrine or otherwise.   In connection with the manufacture, marketing, advertising, promotion, distribution, and sale of Relacore and Relacore Extra, Defendant Gay has exercised complete dominion and control over Basic Research and Carter-Reed such that these companies are his alter ego, a sham, facade, and mere instrumentality for his personal benefit.  He has disregarded and abused the corporate form and structure of those companies to commit an intentional fraud upon the public and defeat the ends of justice and otherwise evade the law.

38.     Defendant Daniel B. Mowrey is a principal shareholder and Director of Scientific Affairs at Basic Research, a consultant to Carter Reed, and the sole employee of American Phytotherapy Research Laboratory, which was renamed DBM Enterprises in 2002.  Defendant Mowrey works exclusively for Defendants Gay, Friedlander, Basic Research, and their affiliated entities, and is responsible for developing their products, including Relacore and Relacore Extra. Defendant Mowrey also reviews advertisements for substantiation.  Specifically, Defendant Mowrey has been responsible for the design, content, approval, distribution and publication of all Relacore and Relacore Extra advertisements disseminated during the Class Period, including the specific advertisements viewed by Plaintiffs.  Additionally, although Defendant Mowrey only has a doctorate degree in psychology, Defendants have identified him in nationwide advertising, either expressly or by implication, as a medical doctor and also as someone having an advanced degree in psychopharmacology.

39.     Defendant Mowrey's intentional tortious acts and personal participation in the wrongful conduct underlying this class action subject him to liability and deprive him of any protection he might otherwise have for his personal liability under the corporate shield doctrine, or otherwise.

40.     Defendant Friedlander is a marketing consultant to the other Defendants and is the self-proclaimed "marketing guru" of Basic Research.  Defendant Friedlander has been directly involved in the labeling and marketing of Basic Research and Carter Reed products, including Relacore and Relacore Extra.  Specifically, Defendant Friedlander has been responsible for the design, content, approval, distribution and publication of all Relacore and Relacore Extra advertisements disseminated during the Class Period, including the specific advertisements viewed by Plaintiffs.  Although he is not an employee of either Basic Research or Carter Reed, Defendant Friedlander maintains his offices at Basic Research's corporate headquarters.   In 1993, Defendants Friedlander and Basic Research entered into a royalty agreement and/or covenant not to sue, pursuant to which Friedlander is entitled to receive a "royalty" payment for each sale of various products marketed by Basic Research.

41.     Previously, Defendant Friedlander has been the subject of "Cease and Desist" Orders and "False Representation" Orders issued by the U.S. Postal Service in connection with his activities concerning the marketing and sale of weight-loss dietary supplements called "Intercal-SX" and "Metabolite-2050," both of which were falsely advertised as causing weight loss in virtually all users, as causing weight loss without willpower or caloric restricting diets or exercise, as preventing foods from being converted into stored fat, as being supported by scientifically sound clinical studies, and as allowing obese persons to lose weight while continuing to eat all the food that such persons wanted.  *In the Matter of the Complaint Against*

*W.G. Charles Company, Customer Service Distribution Center, Inc., Mitchell K. Friedlander, Harris Friedlander, and Michael Meade*, U.S. Postal Service Docket No. 19/10 (Sept. 10, 1985) & *In the Matter of the Complaint Against The Robertson-Taylor Company, Intra-Medic Formulations, Inc., Customer Service Distribution Center, Inc., Mitchell K. Friedlander, Harris Friedlander, and Michael Meade*, U.S. Postal Service Docket Nos. 19/104 and 19/162 (Sept. 10, 1985).

42.     Plaintiffs are unable to identify the specific individuals within Basic Research or Carter Reed who authorized the advertising message that Relacore and Relacore Extra help prevent and reduce stress-related abdominal fat, reduce stress and anxiety, and elevate mood and energy.  But that advertising message was made on the products' product boxes and labels, in Defendants' television commercials, and on the products' website, as described more fully above, and Plaintiffs have described Defendant Gay, Mowrey, and Friedlander's roles in the marketing, distribution, and sale of Relacore and Relacore Extra.

43.     The conduct of Defendants Basic Research, Gay, Mowrey, and Friedlander came to the attention of the Federal Trade Commission ("FTC") in 2004.  The FTC filed a complaint against Defendants Basic Research, Gay, Mowrey, and Friedlander, and their affiliated entities (the "FTC Complaint"), alleging false advertising of purported weight loss products.  The FTC Complaint is attached hereto as Exhibit 1.

44.     In 2006, Defendants Basic Research, Gay, Mowrey, and Friedlander entered into a consent order with the FTC (the "FTC Consent Order"), which ordered them to cease representing in any manner that the products named in the FTC Complaint cause weight or fat loss unless they had a reasonable basis for making the representation, including competent and reliable scientific evidence.

45.     The FTC Consent Order also prohibits Defendants Basic Research, Gay, Mowrey, and Friedlander from making any kind of representation about the health or weight loss benefits, performance, safety, or efficacy of their products unless they have competent and reliable scientific evidence that substantiates the representation.

46.     The Consent Order also provides that Defendants Basic Research, Gay, Mowrey, and Friedlander, "directly or through any corporation, subsidiary, division, or other device, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any product, service, or program in or affecting commerce, shall not misrepresent, in any manner, expressly or by implication, including through the use of endorsements or trade names, the existence, contents, validity, results, conclusions, or interpretations of any test, study, or research." The FTC Consent Order is attached hereto as Exhibit 2.

47.     Defendants Basic Research, Gay, Mowrey, and Friedlander are each the subject of the FTC Consent Order described above.  Their activities related to the labeling, marketing, advertising, and sales of Relacore and Relacore Extra during the Class Period violate the FTC Consent Order.  Those violations are evidence of Defendants' scheme or artifice to defraud Plaintiffs and Class members.  Every act that each of the Defendants undertook, or caused the other Defendants to undertake, in marketing, advertising, and selling Relacore and Relacore Extra in the United States was part of a scheme or artifice to defraud Plaintiffs and the Class.

## V.
## CLASS ACTION ALLEGATIONS

48.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this action on their own behalf and on behalf of the proposed Class.  Plaintiffs seek certification of a Class that consists of:

All persons or entities domiciled or residing in any of the fifty states of the United States of America or in the District of Columbia who purchased Relacore or Relacore Extra.  Excluded from the Class are Defendants, their directors, officers, and employees.

A subclass of all persons or entities domiciled or residing in Florida who purchased Relacore or Relacore Extra (the "Florida Subclass").

A subclass of all persons or entities domiciled or residing in New Jersey who purchased Relacore or Relacore Extra (the "New Jersey Subclass").

49.     The Class is comprised of thousands of purchasers of Relacore and Relacore Extra throughout the United States, making joinder impracticable.  The exact number of Class members is unknown, but their identity can be ascertained through appropriate investigation and discovery.  The disposition of the numerous claims of the Class members in a single class action will provide substantial benefits to all parties and to the Court.

50.     There is a well-defined community of interest in the questions of law and fact involved affecting the Class.  The questions of law and fact common to the Class predominate over questions affecting only individual Class members.  The questions of law and fact common to the Class include, but are not limited to, the following:

a.     Whether Defendants' advertising message that Relacore and Relacore Extra help prevent and reduce stress-related abdominal fat, reduce stress and anxiety, and elevate mood and energy is false and/or misleading;

b.     Whether Defendants engaged in deceptive and unfair trade acts and practices by claiming that Relacore and Relacore Extra are dietary supplements that help prevent and reduce stress-related abdominal fat, reduce stress and anxiety, and elevate mood and energy;

c.     Whether Defendants intended to induce Plaintiffs and the Class to purchase Relacore and Relacore Extra through the false and misleading advertising message that the products help prevent and reduce stress-related abdominal fat, reduce stress and anxiety, and elevate mood and energy;

d.     Whether Defendants Gay, Mowrey, and Friedlander engaged in a scheme to defraud Plaintiffs and the Class;

e.     Whether the conduct of Defendants Gay, Mowrey, and Friedlander violated 18 U.S.C. § 1962(c)

f. Whether the conduct of Defendants Gay, Mowrey, and Friedlander violated 18 U.S.C. § 1962(d);

g. Whether Defendants' false, deceptive, misleading, and unfair labeling and advertising of Relacore and Relacore Extra others violated the common law of unjust enrichment; and

h. Whether Plaintiffs and the Class are entitled to compensatory, statutory, and punitive damages and attorneys' fees and costs as a result Defendants' conduct.

51. Plaintiffs assert claims that are typical of the Class, having purchased Relacore and Relacore Extra as a result of Defendants' false, deceptive, misleading, and unfair efficacy claims. Plaintiffs and Class Members have similarly suffered harm arising from Defendants' common course of conduct.

52. Injuries sustained by Plaintiffs and Class Members flow, in each instance, from a common nucleus of operative facts—Defendants' false, deceptive, and unfair labeling and advertising of Relacore and Relacore Extra as dietary supplements that help prevent and reduce stress-related abdominal fat, reduce stress and anxiety, and elevate mood and energy, which was intended to and did induce Plaintiffs and Class members to purchase Relacore and Relacore Extra at prices far in excess of their value.

53. Plaintiffs are adequate representatives of the Class because their interests do not conflict with and are not antagonistic to the interests of the Class members they seek to represent. Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel who are competent and experienced in the prosecution of class action litigation.

54. Plaintiffs and the Class members have all suffered and will continue to suffer substantial harm and damages due to Defendants' wrongful conduct. A class action is superior to other methods for the fair and efficient adjudication of the subject controversy. Absent a class

action, most Class members will likely find the cost of litigating their individual claims to be prohibitive, and will have no effective remedy at all. Therefore, absent a class action, the proposed Class members' injuries will not be redressed and Defendants' misconduct will proceed without remedy. Class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication. Additionally, Defendants have acted and failed to act on grounds generally applicable to Plaintiffs and the Class, requiring Court imposition of uniform relief to insure compatible standards of conduct toward the Class.

55.     Notice can be provided to original purchasers of Relacore and Relacore Extra at Defendants' expense via internet publication and through the U.S. mail.

## VI.
## CAUSES OF ACTION

### COUNT I – VIOLATION OF 18 U.S.C. § 1962(C)

56.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as if set forth at length herein.

57.     This Count asserts violations of 18 U.S.C. § 1962(c) against Defendants Gay, Mowrey, and Friedlander.

58.     At all times relevant to this class action, Defendants Gay, Mowrey, and Friedlander was each a "person" within the meaning of 18 U.S.C. § 1961(3).

59.     At all times relevant to this action, Basic Research was an "enterprise" within the meaning of 18 U.S.C. § 1961(4) that was engaged in or affected trade or commerce.

60.     At all times relevant to this action, Carter Reed was an "enterprise" within the meaning of 18 U.S.C. § 1961(4) that was engaged in or affected trade or commerce.

61.     Defendants Gay, Mowrey, and Friedlander have caused Basic Research and Carter Reed to engage in and affect interstate commerce through developing, manufacturing, labeling, advertising, and selling Relacore and Relacore Extra to thousands of consumers throughout the United States via television commercials, the products' labeling, transporting Relacore and Relacore Extra across state borders, and other means.

62.     At all times relevant to this class action, Defendants Gay, Mowrey, and Friedlander have conducted or participated, directly or indirectly, in the management and operation of Basic Research and Carter Reed through a pattern of racketeering activity in violation 18 U.S.C. § 1962(c).

63.     At all times relevant to this action, Defendants Gay, Mowrey, and Friedlander willfully engaged in fraudulent conduct with the purpose to defraud consumers, including acts constituting mail fraud in violation of 18 U.S.C. § 1341 and wire fraud in violation of 18 U.S.C. § 1343.

64.     Defendant Gay, Mowrey, and Friedlander's use of the mails and wires to participate in and conduct the affairs of the Basic Research and Carter Reed include but are not limited to:

    a.   Television commercials in which Relacore and Relacore Extra were falsely and misleadingly represented as products that help prevent and reduce stress-related abdominal fat, reduce stress and anxiety, and elevate mood and energy, as described more fully in the preceding paragraphs;

    b.   Website communications that falsely and misleadingly claimed that: "Relacore's proprietary compounds help reduce the stress that causes cortisol production, thereby helping to reduce stress-related belly fat"; "[t]hese functional compounds have enjoyed a long history of use and have been proven effective in clinical trials"; "Relacore's proprietary compounds help reduce the stress that causes cortisol production, thereby helping to reduce stress related belly fat"; and "Relacortin Plus is a more intense concentration, designed to help minimize stress and reduce hormone levels

that are associated with the accumulation and retention of stress-related belly fat," as described more fully in the preceding paragraphs;

c.      Using or causing to be used the U.S. mail by both placing and causing to be placed Relacore and Relacore Extra, letters, marketing and sales materials, advertisements, agreements, and other matters in depositories and by removing or causing to be removed Relacore and Relacore Extra, letters, and other mailable matters from depositories, in violation of the mail fraud statute, 18 U.S.C. § 1341;

d.      Using or causing to be used interstate wire communications to transmit or disseminate false, fraudulent and misleading communications and information, in violation of the wire fraud statute, 18 U.S.C. § 1343. Defendants' use of interstate wire facilities included advertising Relacore and Relacore Extra through television commercials and internet postings, as well as interstate telephone calls from Plaintiffs and Class members who were seeking to purchase the product and/or complain about its non-performance; and

e.      Receiving the proceeds of its improper scheme through the wires and mails.

65.      In addition, Defendants Gay, Mowrey, and Friedlander have violated 18 U.S.C. §§ 1341 and 1343 by communicating by United States mail, e-mail, telephone, and facsimile with each other in furtherance of their use of the Enterprises to carry out the fraudulent and deceptive marketing scheme described herein.

66.      Defendants Gay, Mowrey, and Friedlander engaged in that the above-described conduct in furtherance of and for purposes of executing fraudulent and illegal course of conduct and scheme or artifice to defraud described in this Complaint.

67.      Defendants either individually or in combination with themselves, transported, transmitted, or transferred in interstate commerce money, of the value of $5,000 or more, representing the proceeds of sales of Relacore and Relacore Extra to consumers, knowing the same to have been taken by fraud from Plaintiffs and Class members, in violation of 18 U.S.C. § 2314.

68.      Defendants Gay, Mowrey, and Friedlander have violated 18 U.S.C. § 1952 by

travelling in interstate or foreign commerce and using the mail and facilities in interstate or foreign commerce, with the intent to distribute the proceeds of the unlawful activity described above or otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on of the unlawful activity described above.

69.     Each of the numerous mailings, interstate wire communications, and interstate transportations that were made in furtherance of Defendants' scheme to defraud Plaintiffs and Class members constitute separate and distinct acts of "racketeering activity," as that term is defined in 18 U.S.C. § 1961(1).

70.     The racketeering activities through which Defendants Gay, Mowrey, and Friedlander participated in and conducted the affairs of Basic Research and Carter-Reed amounts to a common course of conduct that was intended to and did deceive and harm Plaintiffs and the Class.

71.     Each racketeering activity was related, had a similar purpose, involved the same or similar participants and methods of commission, and had similar results affecting similar victims.  The fraudulent conduct of Defendants Gay, Mowrey, and Friedlander, as described above, constitutes a scheme or artifice to defraud Plaintiffs and Class members.

72.     Defendant Gay, Mowrey, and Friedlander's use of Basic Research and Carter Reed to carry out a pattern of racketeering activity dates back to at least 2002 and has since continued without interruption.

73.     The racketeering activities of Defendants Gay, Mowrey, and Friedlander are part of their ongoing business and constitute a continuing threat because they are still occurring on a daily basis.  The racketeering activities of Defendant Gay, Mowrey, and Friedlander have injured, and threaten to continue injuring, thousands of purchasers of its products.

74.     By committing such offenses, which victimized Plaintiffs and thousands of Class members, and which continue today and are likely to continue in the future, Defendants Gay, Mowrey, and Friedlander have engaged in a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5).

75.     The fraudulent, deceptive, and unfair activities engaged in by Defendants Gay, Mowrey, and Friedlander in labeling and advertising Relacore and Relacore Extra involve and affect interstate commerce. As alleged herein, Defendants Gay, Mowrey, and Friedlander have caused their affiliated entities to market, sell, and deliver Relacore and Relacore Extra throughout the United States.

76.     Plaintiffs and Class members who purchased Relacore and Relacore Extra have been injured in their business or property because they purchased Relacore and Relacore Extra as a proximate result of Defendant Gay, Mowrey, and Friedlander's above-described racketeering activities, They therefore have standing to sue Defendants Gay, Mowrey, and Friedlander and recover damages and the costs of bringing this class action under 18 U.S.C. § 1964(c).

77.     By virtue of their violations of 18 U.S.C. § 1962(c), Defendants Gay, Mowrey, and Friedlander are jointly and severally liable to Plaintiffs and Class members for three times the damages that Plaintiffs and Class members suffered as a result of Defendants' scheme to defraud.

### COUNT II – VIOLATION OF 18 U.S.C. § 1962(d)

78.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as if set forth at length herein.

79.     This Count asserts violations of 18 U.S.C. § 1962(d) against Defendants Gay, Mowrey, and Friedlander.

80.     18 U.S.C. § 1962(d) provides that it "shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

81.     Defendants Gay, Mowrey, and Friedlander violated § 1962(d) by conspiring to violate § 1962(c).  Defendants Gay, Mowrey, and Friedlander agreed to participate in the conduct of the affairs of Basic Research and Carter Reed, both of which are RICO enterprises, through a pattern of racketeering activity.

82.     Defendants Gay, Mowrey, and Friedlander have engaged in numerous overt predicate racketeering acts in furtherance of the conspiracy, including material misrepresentations designed to defraud Plaintiffs and the Class.

83.     The nature of the material misrepresentations of Defendants Gay, Mowrey, and Friedlander in furtherance of the conspiracy is evidence of their awareness and agreement that their ongoing fraudulent and extortionate acts have been and are part of an overall pattern of racketeering activity.

84.     As described more fully above, Defendants Gay, Mowrey, and Friedlander sought to and have engaged in the commission of and continue to commit overt acts, including the following unlawful racketeering predicate acts:

     a.    Multiple instances of mail and wire fraud violations of 18 U.S.C. §§ 1341 and 1342;

     b.    Multiple instances of mail fraud violation of 18 U.S.C. §§ 1341 and 1346;

     c.    Multiple instances of wire fraud violations of 18 U.S.C. §§ 1341 and 1346;

     d.    Multiple instances of transporting money taken by fraud in violation of 18 U.S.C. § 2314; and

     e.    Multiple instances of unlawful activity in violation of 18 U.S.C. § 1952.

85.     Plaintiffs and the Class have been injured in their business and property by reason of Defendant Gay, Mowrey, and Friedlander's violation of 18 U.S.C. § 1962(d) by conspiring to violate § 1962(c) in that the overt predicate racketeering acts Defendants Gay, Mowrey, and Friedlander engaged in to further their conspiracy directly and proximately caused Plaintiffs and the Class members to expend sums for the purchase or reimbursement of Relacore and Relacore Extra that would not have been paid if Defendants Gay, Mowrey, and Friedlander had not engaged in those racketeering acts in furtherance of their conspiracy.

86.     Defendant Gay, Mowrey, and Friedlander's violations of the above federal laws and the effects thereof, described more fully above, are continuing and will continue.

87.     By virtue of these violations of 18 U.S.C. § 1962(d), Defendant Gay Mowrey, and Friedlander are jointly and severally liable to Plaintiffs and Class Members for three times the damages Plaintiffs and members of the Class have sustained, plus the cost of this suit, including reasonable attorney's fees.

## COUNT III
### VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

88.     Plaintiff Garcia Hopkins incorporates by reference the allegations contained in the preceding paragraphs as if set forth at length herein.

89.     This cause of action is brought by Plaintiff Garcia Hopkins and the Florida Subclass pursuant to the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.* (the "DUTPA").

90.     The express purpose of the DUTPA is to "protect the consuming public . . . from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

91.     Plaintiff Garcia Hopkins and the other members of the Florida Subclass are consumers as defined by Fla. Stat. § 501.203.  Relacore and Relacore Extra are goods within the meaning of the DUTPA.  Defendants Basic Research, Carter Reed, Gay, Mowrey, and Friedlander are engaged in trade or commerce within the meaning of the DUTPA.

92.     Fla. Stat. § 501.204(1) declares unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

93.     Fla. Stat. § 501.204(2) states that "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to [section] 5(a)(1) of the Federal Trade Commission Act."

94.     Defendants have violated the DUTPA by engaging in the deceptive, unfair, and unconscionable acts and practices alleged herein, which offend public policies and are immoral, unethical, unscrupulous and substantially injurious to consumers.  Defendants advertising message that Relacore and Relacore Extra help prevent and reduce stress-related abdominal fat, reduce stress and anxiety, and elevate mood and energy is likely to misled a person acting reasonably in the circumstances in violation of Fla. Stat. § 500.04 and 21 U.S.C. § 343.

95.     Plaintiff Garcia Hopkins and the other members of the Florida Subclass have been aggrieved by Defendants' violations of the DUTPA in that they paid for Relacore and/or Relacore Extra as a direct and proximate result of Defendants' false, deceptive, and unfair labeling and advertising of Relacore and Relacore Extra help, in amounts to be determined at trial.

96.     Pursuant to Fla. Stat. § 501.211(1), Plaintiff Garcia Hopkins and the other members of the Florida Subclass seek a declaratory judgment and court order enjoining the

above-described wrongful acts and practices of Defendants and for restitution and disgorgement.

97.     Additionally, pursuant to Fla. Stat. §§ 501.211(2) and 501.2105, Plaintiff Garcia Hopkins and the other members of the Florida Subclass make claims for damages, punitive damages, attorneys' fees, and costs.

## COUNT IV
### VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT

98.     Plaintiff Lawton incorporates by reference the allegations contained in the preceding paragraphs as if set forth at length herein.

99.     This cause of action is brought by Plaintiff Lawton and the New Jersey Subclass pursuant to the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, *et seq.*

100.    At all relevant times, Defendants were each a "person" within the meaning of N.J. Stat. Ann. § 56:8-1(d).

101.    At all relevant times, Relacore and Relacore Extra constituted "merchandise" within the meaning of N.J. Stat. Ann. § 56:8-1(c).

102.    At all relevant times, Defendants manufacturing, labeling, marketing, advertising, sales, and distribution of Relacore and Relacore Extra met the definition of "advertising" in N.J. Stat. Ann. § 56:8-1(a).

103.    At all relevant times, Defendants' manufacturing, labeling, marketing, advertising, sales, and distribution of Relacore and Relacore Extra to Plaintiff Lawton and the other members of the New Jersey Subclass met the definition of "sale" in N.J. Stat. Ann. § 56:8-1(e).

104.    N.J. Stat. Ann. 56:8-2 provides that "[t]he act, use or employment by any person of any unconscionable practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of material fact with

the intent that others rely upon such concealment, suppression or omission, . . . is declared to be an unlawful practice."

105.    As described in detail above, Defendants falsely, deceptively, and unfairly represented to Plaintiff Lawton and each member of the New Jersey Subclass that Relacore and Relacore Extra help prevent and reduce stress-related abdominal fat, reduce stress and anxiety, and elevate mood and energy, by means of their advertising, marketing, and other promotional materials, and on the products' boxes and labels.

106.    Defendants have therefore engaged in practices that are unconscionable, deceptive and fraudulent and based on false pretenses, false promises, misrepresentations, and the knowing concealment, suppression, or omission of material fact with the intent that others rely upon such concealment, suppression, or omission in their manufacturing, advertising, marketing, selling, and distribution of Relacore and Relacore Extra.  Defendants have therefore violated the New Jersey Consumer Fraud Act.

107.    Plaintiff Lawton and the other members of the New Jersey Subclass have been aggrieved by Defendants' violations of the New Jersey Consumer Fraud Act in that they paid for Relacore and/or Relacore Extra as a direct and proximate result of Defendants' false, deceptive, and unfair labeling and advertising.

108.    Additionally, pursuant to N.J. Stat. Ann. § 56:8-19, Plaintiff Lawton and the other members of the New Jersey Subclass make claims for damages, punitive damages, attorneys' fees, and costs.

## COUNT V
### UNJUST ENRICHMENT

109.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as if set forth at length herein.

110.    As a result of Defendants' fraudulent, false, deceptive, and unfair labeling, advertising, marketing, and sales of Relacore and Relacore Extra, Defendants were unjustly enriched at the expense of Plaintiffs and the Class through their payment of the purchase price for Relacore and Relacore Extra.

111.    In light of the fact that Relacore and Relacore Extra are ineffective and do not help prevent or reduce stress-related abdominal fat, do not reduce stress and anxiety, and do not elevate mood and energy, it would be against equity and good conscience to permit Defendants to retain the ill-gotten benefits that they received from Plaintiffs and the Class.  It would be unjust and inequitable not to require Defendants to disgorge the benefits they have received as a result of the purchases of Relacore and Relacore Extra by Plaintiffs and the Class and provide restitution to them.

112.    The amount of restitution to which Plaintiffs and the Class are entitled should be measured by the extent of Defendants' unjust enrichment, including their unjustly acquired profits and other monetary benefits resulting from their wrongful conduct.

## VII.
## PRAYER FOR RELIEF

Plaintiffs, on behalf of themselves and the Class, request that the Court order the following relief and enter judgment against Defendant as follows:

a.    An Order certifying the proposed Class and appointing Plaintiffs and their counsel to represent the Class;

b.    An Order permanently enjoining Defendants from their improper activities and conduct alleged herein;

c.    A judgment awarding Plaintiffs and the Class damages;

d.    A judgment awarding Plaintiffs and the Class restitution;

e.      A judgment awarding Plaintiffs and the Class punitive damages;

f.      Pre-judgment and post-judgment interest;

g.      Attorneys' fees and expenses and the costs of this action; and

h.      All other and further relief as the Court deems necessary, just, and proper.

## VIII.
## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury.

By:   __/s/ John B. Patterson_____
**BALKAN & PATTERSON, LLP**
John B. Patterson (Florida Bar No. 023930)
Adam M. Balkan (Florida Bar No. 044880)
601 South Federal Highway, Suite 302
Boca Raton, Florida 33432
Telephone: (561) 750-9191
Facsimile: (561) 750-1574
john@balkanandpatterson.com
adam@balkanandpatterson.com

**BAILEY PERRIN BAILEY**
Fletcher V. Trammell (Texas Bar No. 24042053)
Justin C. Jenson (Texas Bar No. 24071095)
440 Louisiana, Suite 2100
Houston, Texas 77002
Telephone: (713) 425-7100
Facsimile: (713) 425-7101
ftrammell@bpblaw.com
jjenson@bpblaw.com
(*pro hac* admission will be requested)

**CRAFT HUGHES LAW, P.C.**
W. Craft Hughes (Texas Bar No. 24046123)
Three Allen Center
333 Clay Street, Suite 4720
Houston, Texas 77002
(713) 857-4106 Telephone
(888) 995-3335 Facsimile
craft@crafthugheslaw.com
(*pro hac vice* admission will be requested)

Dated: October 11, 2010                          *Attorneys for Plaintiffs*